# 2007-2011
# WALL AND CEILING CARPENTERS/LATHERS
# AGREEMENT

BETWEEN
WEST CENTRAL OHIO DIVISION
WALL AND CEILING CONTRACTORS SECTION OF THE
LABOR RELATIONS DIVISION OHIO BUILDING
CHAPTER, INC.
ASSOCIATED GENERAL CONTRACTORS OF AMERICA

AND

THE OHIO & VICINITY REGIONAL COUNCIL OF CARPENTERS,
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA

## EFFECTIVE JUNE 1, 2007 TO MAY 31, 2011

Union Printed by:   ⊙ ⟨ALLGCU⟩ 53-C   High-Craft Printing

# INDEX

| TITLE | ARTICLE | PARAGRAPH NUMBER | PAGE |
|---|---|---|---|
| ACCEPTANCE OF AGREEMENT | | | 22 |
| APPRENTICES | XII | 55 | 12-13 |
| CONSTRUCTION INDUSTRY ADVANCEMENT PROG | XXI | 99 | 18-19 |
| DECLARATION OF PRINCIPLES | | | 4-5 |
| DISPUTES AND ARBITRATION | II | 8 | 5-6 |
| DRUG FREE WORKPLACE | XXIII | 107 | 20 |
| DUES DEDUCTION | XV | 84 | 16 |
| ELIMINATION OF LUMP AND PIECE WORK | XVII | 89 | 17 |
| EMPLOYERS REQUIREMENTS | XIII | 64 | 14-15 |
| ENFORCEMENT RIGHTS | XX | 93 | 18 |
| FOREMEN AND GENERAL FOREMEN | XI | 51 | 12 |
| HEALTH/WELFARE, ANNUITY, PENSION PLANS | XIV | 74 | 15-16 |
| INTENTION | XXII | 105 | 19-20 |
| LATHING | VI | 21 | 7-8 |
| MEMBERS OF AFFILIATED UNIONS | XVIII | 90 | 17 |
| MOST FAVORED NATIONS | XXIV | 109 | 20 |
| PERIOD OF AGREEMENT | XXV | 110 | 20-21 |
| PREAMBLE | | 3 | 3-4 |
| REFERRAL AND REPORTING PAY | IX | 39 | 10 |
| SAFETY | VIII | 38 | 10 |
| SETTLEMENT OF JURISDICTIONAL DISPUTES | III | 10 | 6 |
| STEWARDS | XVI | 86 | 17 |
| STRIKES AND LOCKOUTS | I | 6 | 5 |
| TERM OF AGREEMENT | | 1 | 3 |
| TOOLS AND TOOL CONDITIONING | XIX | 91 | 17 |
| TRADE AUTONOMY AND WORK JURISDICTION | V | 14 | 6-7 |
| UNION SECURITY | IV | 11 | 6 |
| WAGES, CLASSIFICATIONS, PAY DAY | X | 41 | 10-11-12 |
| WORKING CONDITIONS, HOLIDAYS & OVERTIME | VII | 28 | 8-9-10 |

## TERMS OF AGREEMENT AND GEOGRAPHIC AREA

(1)    This agreement is made and entered into this 1ˢᵗ day of June 2007 by and between the West Central Ohio Wall and Ceiling Contractors Section of the Labor Relations Division, Ohio Building Chapter, Inc., Associated General Contractors of America hereinafter called "employer"; and The Ohio & Vicinity Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America herein called "union".  Representing wall and ceiling carpenters/lathers including only lathers, access floor installers, acoustic ceiling installers, demountable partition installers, drywall hangers and metal stud framers.  This agreement shall cover all commercial, industrial, building work performed in the entire counties of Appendix (C): Champaign, Clark, Darke, Greene, Logan, Miami, Montgomery, Preble and Shelby in Ohio.

The geographical jurisdiction of The Ohio & Vicinity Regional Council of Carpenters is greater than the area covered by this agreement totaling fifteen (15) counties in Ohio as follows; Appendix (C): Logan, Clark, Champaign, Darke, Shelby, Miami, Greene, Montgomery, Preble and Appendix (A): Warren, Butler, Clinton Hamilton, Clermont and Brown; and, the following six (6) counties in Appendix (B): Kentucky: Boone, Braken, Campbell, Grant, Kenton and Pendleton.  The geographical scope of this agreement shall be as listed in paragraph one (1) above.  Contractors signatory to this agreement further agree that in the event that they work within any of the twelve other counties under the jurisdiction of the OVRCC they will pay the wages and fringe benefits of that county but will work under the conditions stipulated under this agreement.

Wall and ceiling carpenters/lathers living in the geographical area covered by this agreement shall be given preference in employment.

(2)    This agreement shall be in full force and effect from June 1, 2007 through midnight May 31, 2011.

## PREAMBLE

(3)    This agreement is entered into to prevent strikes and/or lockouts and to facilitate a peaceful adjustment of grievances or disputes which may arise between the employer and the union in this trade, and to prevent waste and unnecessary and avoidable delays and expense and for the further purpose, insofar as possible, at all times to secure for the employer sufficient skilled wall and ceiling carpenters/lathers, and, insofar as possible, to provide continuous employment for labor, such employment to be in accordance with the conditions herein set forth at the wages herein agreed upon, that stable conditions may prevail in building construction, that building costs may be as low as possible consistent with fair wages and conditions and further to establish the necessary procedure by which these ends may be accomplished.

(4)    By executing this agreement, an employer shall become a member of and give its bargaining rights to The West Central Ohio Division Wall and Ceiling Contractors Section of The Labor Relations Division Ohio Building Chapter, Inc., Associated General Contractors of America, Inc. and hereby authorizes The West Central Ohio Division Wall and Ceiling Contractors Section of The Labor Relations Division Ohio Building Chapter, Inc., Associated General Contractors of America, Inc., as its representative for collective bargaining purposes with respect to the union.  These bargaining rights will remain with the Association from contract to

contract unless canceled in writing to the Association not greater than one hundred twenty (120) days or less than sixty (60) days from the current contract expiration date.

**(5)**     The employer acknowledges that the union has offered to establish its majority status by allowing the employer to examine authorization cards voluntarily executed by the employer's eligible employees in an appropriate unit; the employer is satisfied that the union represents a majority of its eligible employees in an appropriate unit and has waived the opportunity to examine the authorization cards; and therefore the employer recognizes, pursuant to Section 9 (a) of The Labor-Management Relations Act of 1947 as amended, the union as the sole and exclusive bargaining representative for all full-time and regular part-time journeymen, apprentices, foremen and general foremen performing carpentry work, but excluding all office employees, professional employees, managerial employees, guards and supervisors as defined in The Labor-Management Relations Act of 1947 as amended.

## DECLARATION OF PRINCIPLES

A.     The selection of foreman or general foreman carpenter shall be entirely the responsibility of the employer.

B.     The welding torch is a tool of the trade having jurisdiction over the work being welded. Craftsmen using the welding torch shall perform any of the work of their trade and shall work under the supervision of the foreman.

C.     Wall and ceiling carpenters/lathers shall be at their regular place of work at the starting time and shall remain at their place of work until the regular quitting time.

D.     There shall be no limit on the production by wall and ceiling carpenters/lathers or restriction on the full use of proper tools or equipment and there shall not be any task or piecework.

E.     Payment of excessive daily travel allowance or subsistence shall be discouraged.

F.     Jurisdictional disputes shall be settled in accordance with the procedures established by The National Labor Relations Board.

G.     Slow downs, forcing of overtime, spread work tactics, standby crews and featherbedding practices have been and are condemned.

H.     Stewards shall be qualified journeymen performing work of their craft.  There shall be no non-working stewards.

I.     There shall be no strikes, work stoppages or lockouts during the processing of any grievances or disputes in accordance with the manner prescribed in this agreement.

J.     There shall be no restriction of the use of any raw material, except prison made.

K.     No person except those representing the carpenter shall have the right to interfere with wall and ceiling carpenters/lathers during working hours.

L.     The use of apprentices shall be encouraged as provided herein.

M.     The carpenter is at liberty to work for whomever he/she sees fit, but shall demand and receive the wages agreed upon by this agreement.

N.     The employer is at liberty to employ and discharge whomsoever he sees fit.

O.     An obligation imposed upon and accepted by the union as being properly its own, is the availability at all times insofar as possible, during the life of this agreement to provide skilled craftsmen capable of performing the work of this trade, and to constantly endeavor to improve the ability of such wall and ceiling carpenters/lathers, and further to have in the

making through apprenticeship training, wall and ceiling carpenters/lathers who can enter this trade properly equipped to perform the work.

P.  The employer, the union, and each carpenter will comply with all applicable Local, State, and Federal statutes and regulations as well as employer accident prevention and environmental safety rules. Included in these, but not necessarily restricted to, are the following: Ohio State Worker's Compensation Insurance Law, IC-3 specific safety requirements of The Industrial Commission of Ohio relating to construction, Federal Security Agency, Social Security Agency, and The Bureau of Unemployment Compensation.

Q.  The employer and the union agree that neither party will discriminate in any manner against any carpenter, or applicant for employment or apprenticeship, because of race, creed, color, sex, national origin or ADA covered persons; further, both the employer and union agree to abide by all relative Federal and State laws and rulings promulgated by The Office of Federal Contract Compliance of The Department of Labor.

## ARTICLES OF AGREEMENT
### ARTICLE I
### STRIKES AND LOCKOUTS

(6)  The union agrees that if any union or group of employees engage in picketing or any work stoppage on the job, the union and employees shall consider such picketing or work stoppage as an illegal strike, and will refuse to honor any picket line established. The union shall not be held liable for the actions of individual employees.

(7)  Therefore, with the Preamble and Declaration of Principles as part of and fundamental to this agreement, the employer and the union hereby agree that there shall be no lockout by the employer, or strike, stoppage, or the abandonment of the work whether individually or collectively, concerted or separate action by the union without arbitration of the matter in dispute as hereinafter provided, except for the provisions of Article XX, "Enforcement Rights", which is specifically excluded from any requirement of arbitration.

## ARTICLE II
### DISPUTES AND ARBITRATION

(8)  Should a dispute arise between either party to this agreement said dispute shall be reported within fourteen working days following the realization of the complaining party of the dispute to the Association or union as appropriate. Within fourteen working days following receipt of notification of a dispute for the purposes of considering same, the parties shall meet. Four board members shall constitute a quorum, two from the Association and two from the union. Each member shall have one vote only and neither shall cast more ballots than the other. A decision shall require a majority of those members voting and such decision shall be final and binding on the parties. Failure to follow the time limitations will make the grievance invalid. In the event the decision of the parties does not result in a majority decision. Either party may within (10) working days following the meeting of the board, refer the dispute to arbitration by the making of written notice to the other party, as to the making of such notification, the party submitting the matter to arbitration shall apply to American Arbitration Association for a list of arbitrators approved by The

National Academy of Arbitrators (NAA). From which list both parties shall alternately strike names until the last name remains. With such person to be designated as the arbitrator. The selection of the arbitrator shall be made within ten (10) working days following receipt of the list of arbitrators. The arbitrator shall not have the power to add to, subtract from, or modify the express terms and provisions of this agreement. The parties, the employer affected by the arbitration procedure and the union, shall equally share the expenses and fees of the arbitrator. Said employer and the union shall bear their own respective costs of the arbitration proceedings separately. The general wage scale, as well as the extension, negotiation or renewal of this agreement shall be as defined in this agreement and not be subject to arbitration.

(9)     In the event that either party fails to comply with a decision of the board or a decision of an arbitrator, the terms and conditions of Article I of this agreement shall not apply.


## ARTICLE III
## SETTLEMENT OF JURISDICTIONAL DISPUTES

(10)     In case of a jurisdictional dispute same shall be immediately referred to The National Labor Relations Board to be settled in accordance with established rules, regulations and procedures.


## ARTICLE IV
## UNION SECURITY

(11)     All wall and ceiling carpenters/lathers who are members of the union on the effective date of this agreement shall be required to remain members of the union as a condition of employment during the term of this agreement. New wall and ceiling carpenters/lathers shall be required to become and remain members of the union as a condition of employment on and after the eighth (8th) day following the original date of their employment or the effective date of this agreement, whichever is later.

(12)     Membership as used herein shall mean only the obligation to pay periodic dues and initiation fees uniformly required or, in the event that the employee objects to the payment of full dues and initiation fees, only the obligation to pay periodic dues and initiation fees related to representational costs.

(13)     During the first seven (7) days following the original date of employment with the employer, a new carpenter shall be on a trial basis and may be discharged at the discretion of the employer.


## ARTICLE V
## TRADE AUTONOMY AND WORK JURISDICTION

(14)     Wall and ceiling carpenters/lathers covered by this agreement shall be classified as journeymen, apprentice wall and ceiling carpenters/lathers, hereafter referred to as wall and ceiling carpenters/lathers.

**(15)**    The employer agrees in making assignments of work to give consideration to agreements and decisions of records contained in agreements between international unions, agreements between local unions in the area, trade practice and local area practice.

**(16)**    The employer agrees to recognize any existing jurisdiction of work agreement(s) that may exist between the union and any other labor body affiliated with The Dayton Building Trades Council, AFL-CIO, when making assignments of work not specifically covered by this agreement.

**(17)**    The trade autonomy of the United Brotherhood of Carpenters and Joiners of America consists of the milling, fashioning, joining, assembling, erecting, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition, and all other substitute materials; and the handling, cleaning, erecting, installing, and dismantling of machinery, equipment and all materials used by members of The United Brotherhood of Carpenters and Joiners of America.

**(18)**    The United Brotherhood of Carpenters and Joiners of America's jurisdiction extends over the following divisions and subdivisions of the trades:  carpenters and joiners, millwrights, pile drivers, lathers, bridge, dock and wharf carpenters, divers, underpinners, timbermen and core drillers, shipwrights, boat builders, ship carpenters, joiners and caulkers, cabinet makers, bench hands, stair builders, mill men, wood and resilient floor layers and finishers, carpet layers, shinglers, siders, insulators, acoustic and drywall applicators, tile, terrazzo and marble helpers, shorers and house movers, loggers, lumber and sawmill workers, furniture workers, reed and rattan workers, shingle weavers, casket and coffin makers, box makers, railroad carpenters and car builders, regardless of materials used, and all those engaged in the operation of woodworking or other machinery required in the fashioning, milling, or manufacturing of products used in the trade or engaged as helpers to any of the above divisions or subdivisions, and the handling, erecting and installing of material on any of the above divisions or subdivisions, burning, welding, hand and power rigging, and the use of any instrument or tool for layout work incidental to the trade.

**(19)**    Materials not crated, boxed or cartoned such as trim, showcases, display cases, cabinets, paneling, baseboard, chair rails, window sash, doors, door jambs and walk-in coolers, shall be unloaded and installed by wall and ceiling carpenters/lathers.  If a mixed load arrives on the job site, a composite crew shall unload to the designated stockpile(s).  The uncrating shall be done by wall and ceiling carpenters/lathers.

**(20)** · Wall and ceiling carpenters/lathers shall handle all material which is being erected or which is to be erected by them from the employer-designated stockpiles on each level or at each area where material is to be used.

**ARTICLE VI**
**LATHING**

**(21)**    Section 1.  Lathing Geographic Jurisdiction - The geographic jurisdiction covered by this agreement with respect to lathing shall be the lathing counties as defined in the 1987 to 1989 collective bargaining agreement between West Central Ohio Division Carpenters, Employer Section of The Labor Relations Division Ohio Building Chapter, Inc., Associated General

Contractors of America and The Ohio & Vicinity Regional Council of Carpenters, Ohio and Vicinity.

**(22)**   Section 2. Lathing Work Jurisdiction - Lathing is a branch of the trade coming under the jurisdiction of The United Brotherhood of Carpenters and Joiners of America.  The installation, erection, construction and completion of the following work shall be deemed lathing work covered by the provisions of this article:  all carrying bars, purlins and furring regardless of size; light iron and metal furring of all descriptions, such as rods, channels, flat iron, nailock, screw lock, pomeroy, T-Bar, H-Bar, Z-Bar, metal splines; all light iron and metal studs such as stran steel, penn metal, sould, and all other types of light iron and metal studs and all other light iron furring erected to receive lath and plastic or acoustical materials.

**(23)**   The nailing, tying, and fastening of all wire and metallic lath such as wire cloth, wire mesh, expanded metal lath, hyrib lath and all rib and flat expanded metal lath and wire of all descriptions as well as the placing of all hangers and all inserts used for the purpose of supporting suspended ceilings of any of the above types of light iron  and metal furring which receives lath and plaster or acoustical materials; the placing of all types of floor lath, such as hyrib lath, paperback steeltex floor lath, penn metal rib, and all other appurtenances connected therewith.

**(24)**   The tying, nailing, clipping, or fastening of all types of lath, regardless of size, such as wood lath, plaster board, button board, flaxlinum board, bishoperic celotex, gypsum lath, rocklath, sheetrock, or any and all other types of material erected to receive or hold plaster or acoustical material.

**(25)**   The erection of any and all mechanical acoustical systems such as cupples, economy, fiberglass, jackson, reynolds aluminum, securities, interlock, grid, or any other type or kind which takes the place of same to which acoustical material is attached or adhered.

**(26)**   The erection of all metal plastering accessories such as metal corner beads, door and window casing beads, metal picture mould, metal chair rail, metal base and case screed, and any and all other metaL plastering accessories which are covered and/or serve as a ground, guard, or screed for plaster material.

**(27)**   Foreman's Pay- When three (3) lathers are on one job, one lather shall be a foreman, or if the job constitutes a foreman with less men.  Lathing foreman shall be paid a premium per hour worked as set forth in the applicable wage schedule within this agreement.  All foremen are to be chosen by the employer.

## ARTICLE VII
## WORKING CONDITIONS, HOLIDAYS AND OVERTIME

**(28)**   Hours per day- Eight (8) hours shall constitute a day's work between the hours of 6:00 a.m. and 6:00 p.m.

**(29)**   Days per Work Week- Five (5), eight (8) hour days shall constitute the week's work period beginning Monday at 6:00 a.m. and ending Friday at 6:00 p.m.

**(30)**   Shift Work-When work is carried on in more than one shift,  the first shift shall work eight (8) hours at the regular rate of wages; the second shift shall work seven and one-half (7 1/2) hours and receive eight (8) hours pay; the third shift shall work seven hours and receive eight (8) hours pay.

**(31)**   Night Work-When work is of such a nature that it cannot be performed in the daytime, then such work may be performed at night on the basis of shift work; seven and one-half (7 1/2) hours of work for eight (8) hours of wages paid, provided, however, the union shall be given notification by the employer prior to the commencement of such work.

**(32)**   Lunch Time/Coffee-A lunch time shall begin not later than five (5) hours following commencement of starting time unless unusual circumstances dictate other arrangements.  There shall be no designated or organized coffee break or rest period taken during working hours.  This does not preclude the employee from pausing at his work place for ten minutes in the morning for coffee or a cold drink, provided he takes his thermos bottle with him to the work place and does not interfere with the progress of the work.

**(33)**   Job Site Passes-On all jobs where wall and ceiling carpenters/lathers are required to have passes, said wall and ceiling carpenters/lathers shall receive up to three (3) hours pay to get said passes, provided such wall and ceiling carpenters/lathers have car registration, insurance and other necessary documents in order.

**(34)**   Carpenters shall not suffer loss of hourly wages due to moving from job to job during regular working hours.  When employees are sent out of The Ohio & Vicinity Council jurisdiction to work, the employer shall provide a reasonable payment of traveling expenses.  This shall be done on a job basis, but should include payment of mileage (if using the employee's own vehicle), lodging (if required), and meals.

**(35)**   Holidays-The following days will be observed as Holidays:  New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day.  Scheduled Holidays falling on Sunday shall be celebrated on the following Monday.  No work shall be performed on Labor Day unless life or property is in danger.  Any carpenter who may not wish to work Martin Luther King Day or the Friday after Thanksgiving shall be allowed the day off, provided the carpenter notifies the employer one week before the day.  There shall be no reprisal for exercising this right.  Furthermore, any carpenter choosing to work on this day shall be paid at the straight time hourly rate.

**(36)**   Overtime shall be paid at the rate of time and one-half (1 1/2) the wall and ceiling carpenters/lathers regular hourly wage for all work performed over eight (8) hours each day and forty (40) hours each week.  Any work performed on Sundays or Holidays listed herein shall be paid at two (2) times the wall and ceiling carpenters/lathers regular wage for all hours worked.

(37)   A make-up day may be scheduled for Saturday (or Friday if working four tens) if during the week, work was canceled due to weather conditions or other conditions beyond the contractor's control. Such work will be paid for at the straight-time rate of pay. On weeks where recognized holidays fall within the work week, the remaining four days will be considered the full week. If a contractor is working four tens as straight-time and the recognized holiday falls on one of the four ten schedule scheduled days, the remaining three days will be considered the full week. The make-up day is voluntary without penalty or recrimination.

## ARTICLE VIII
## SAFETY

(38)   In accordance with applicable OSHA safety and health standards required safety and education, the Union shall make available to each member the 30-hour OSHA training course. All existing journeymen are required to complete the training prior to 06/01/09 and all apprentices are required to complete the training within two (2) years of graduation from the apprenticeship program.

## ARTICLE IX
## REFERRAL AND REPORTING PAY

(39)   Referral Pay-Should any employer order wall and ceiling carpenters/lathers to report for work and fails to put same to work, said wall and ceiling carpenters/lathers shall receive two (2) hour's pay unless inclement weather prevents working.

(40)   Reporting Pay-Any carpenter who reports for work regardless of weather, and for whom no work is provided, shall receive pay for one hour at the stipulated rate for so reporting provided, however, the employer may notify the employee not to report for work prior to the start time of the shift in which event this section shall not apply. Wall and ceiling carpenters/lathers are to remain on the job for this one hour unless released by the employer's job site representative.

## ARTICLE X
## WAGES, CLASSIFICATIONS AND PAY DAY

(41)   Wages and pay-day the term(s) "hourly rate", "pay" or "wages" used in this agreement shall mean the actual rate of hourly base wages to be paid and all employer fringe benefit contribution payments inclusive.

(42)   Wall and ceiling carpenters/lathers covered by this agreement shall include the classifications of: lathers, access floor installers, acoustic and ceiling installers, demountable partition installers, drywall hangers and metal stud framers.

(43)   All fringe contributions shall be paid at straight-time rates for overtime hours worked.

## WAGES

**Section 1.** Wage rates, contribution rates, and other provisions for journeymen and apprentice carpenters and pile drivers shall be set forth in the following Appendices which are hereby incorporated into the Agreement:

**Appendix (A), Cincinnati:** Ohio counties are as follows: Brown, Butler, Clermont, Clinton, Hamilton and Warren.

**Appendix (B), Kentucky:** Kentucky counties are as follows: Bracken, Boone, Campbell, Grant, Kenton and Pendleton.

**Appendix (C), Dayton:** Ohio counties are as follows: Champaign, Clark, Darke, Greene, Logan, Miami, Montgomery, Preble and Shelby.

**Section 2.** At the option of the Union and upon at least 30 days written notice to the Labor Relations Division, AGC of Ohio, Associated General Contractors of America, Inc., the wage rate established by this Agreement may be reduced and the Employer contributions to the Heath and Welfare Fund, Pension Fund, and/or Annuity Funds increased by the amount of the wage reduction.

**Section 3. APPRENTICE RATES:** The following percentages of journeymen hourly scale will be in effect for apprentices.

$$*1^{st} \text{ 6 months} ..................... 60\%$$
$$*2^{nd} \text{ 6 months} ..................... 65\%$$
$$*3^{rd} \text{ 6 months} ..................... 70\%$$
$$*4^{th} \text{ 6 months} ..................... 75\%$$
$$5^{th} \text{ 6 months} ..................... 80\%$$
$$6^{th} \text{ 6 months} ..................... 85\%$$
$$7^{th} \text{ 6 months} ..................... 90\%$$
$$8^{th} \text{ 6 months} ..................... 95\%$$

*  The Employer will pay ($1.50) cents per hour into the pension Fund until the apprentice reaches the 5th period of Apprenticeship. Any increase for the Journeymen pension during the term of this Agreement will be applied to the above rate. After the Apprentice reaches the 5th period, he or she will receive the appropriate rate of pension for journeymen.

The starting rate for an apprentice shall be set forth above and the upgrading shall be as follows: Based on this record, it shall be the responsibility of the Committee to decide whether to advance the apprentice and grant the applicable wage increase.

**(44)**  At the exclusive option and discretion of the union, wage increases may be diverted into the Health & Welfare Plan, Pension Plan, Annuity Fund and/or The Apprenticeship Fund  by

written notification to the Association at least thirty (30) days prior to the effective date(s) of the scheduled increases.

**(45)**    Note:  All apprentices shall receive their 6 month wage increment increase on July 1 and January 1 of each year provided the apprentice(s) has met the standards established by The Joint Apprentice Committee.

**(46)**    Wall and ceiling carpenters/lathers must be paid at or before the close of the established payday, if weather permits; otherwise, at the office of the employer.  When wall and ceiling carpenters/lathers fail to receive their pay by quitting time on the established payday, unless the delay is unavoidable, the carpenter(s) shall receive time of one (1) hour additional pay at double time rate including fringe contributions.  Failure to pay within two (2) hours and cause the carpenter to wait longer shall entitle the carpenter to the regular rate of pay until received.

**(47)**    Wall and ceiling carpenters/lathers who are discharged or laid off shall be notified one (1) hour ahead of time in order to recondition their tools and shall be paid in full on the job or allowed time to get their wages at the office of the employer.

**(48)**    No employer may deduct any part of a carpenter's wages for any purpose without the consent of the carpenter, except as required by law.

**(49)**    Not more than one (1) week's pay shall be held back from the regular weekly pay.

**(50)**    On any project(s) where wage rates have been predetermined by an agency of the Federal Government, that predetermined rate including all increments listed in the pre-determined rate shall remain in effect for the duration of such project.

## ARTICLE XI
## FOREMEN AND GENERAL FOREMEN

**(51)**  A foreman shall be employed when three (3) or more wall and ceiling carpenters/lathers are employed and shall receive the hourly rate in effect.  Foreman shall receive $1.50 above Journeyman rate.

**(52)**    When three (3) or more foremen are employed, there shall be a general foreman employed who will give instructions to the foremen, but who will not be permitted to hire or discharge wall and ceiling carpenters/lathers, except where the work is in the direct charge of the employer. General Foreman shall receive $2.00 above Journeyman rate.

**(53)**    A foreman in charge of the work shall give all instructions to the wall and ceiling carpenters/lathers.  Foremen shall be allowed to keep an account of all materials used by wall and ceiling carpenters/lathers on the job as a whole.  The foreman shall, upon request of the steward, send new wall and ceiling carpenters/lathers to the steward before going to work.

(54)    While a foreman or general foreman shall prove their efficiency as such, they shall not rush, use abusive language or otherwise abuse wall and ceiling carpenters/lathers under their direction. Violation of this rule is punishable by discharge and expulsion from the job, or both.

## ARTICLE XII
## APPRENTICES

(55)    After employing two (2) journeymen, the next carpenter employed may be an apprentice. After employing five (5) journeymen, an apprentice shall be employed as the next carpenter employed.   One (1) additional apprentice shall be employed for each five (5) journeymen employed thereafter.   After the first apprentice is employed, the ratio of apprentices to journeyman shall not exceed one (1) apprentice for three (3) journeymen.

(56)    The apprentice to journeyman ratio shall pertain to the employer's total employment of journeymen which shall not have to be maintained on any specific job provided a journeyman is on each job where an apprentice is employed.  The employer is responsible for apprentices receiving the necessary on-the-job experience and related technical instructions.

(57)    All apprentices must attend apprentice school as established and administered by the Joint Apprenticeship Committee.    The apprentice school courses shall meet the minimum requirements established by The Bureau of Apprenticeship and Training.  The employer agrees to discharge from employment any apprentice or trainee who violates this section, upon receipt of such notice by certified mail from The Joint Apprenticeship Committee.

(58)    The Joint Apprenticeship Committee shall be composed of equal representation from employers and from the union.   This committee shall be charged with administering the apprenticeship and training program and its funds.    It shall pass on applications for apprenticeship and training, consider requests for promotions, consult with the apprenticeship and training program.  This committee shall meet regularly on the call of the chairman during the apprenticeship and training school year and at such times as are necessary to properly promote the welfare of the apprenticeship and training program.

(59)    The Employer agrees to contribute to the Fund for each hour worked by employees covered by this Agreement for the cost of training only the amount as stated and approved in the Appendixes of this Agreement.  The establishment of the United Brotherhood of Carpenters and Joiners of America National Health and Safety Fund and National Apprenticeship and Training Fund will become a part of this article.  The employer shall contribute an additional $.04 (four cents) per hour for each hour worked by all employees covered by this agreement to the UBCJA to be divided equally between the National Health and Safety and the National Apprenticeship and Training Fund.  The parties also agree that the Employer shall make a contribution of two cents ($.02) per hour worked for each employee covered by this Agreement to the UBC Labor Management Education and Development Fund (Education Fund).   The Trust Fund thus established with all its terms and provisions and with any amendments thereto, shall be considered a part of this agreement; and shall continue in full force and effect throughout the life of this agreement unless terminated in a manner consistent with the provisions herein.

(60)     Payments shall be made in accordance with the instructions on the reporting form furnished by The Joint Apprentice Committee. The monthly contribution payment and report shall include the last full weekly pay period of the month and shall be due and payable on or before the twentieth (20th) day of each month covering all amounts due for the preceding month(s).

(61)   The Ohio & Vicinity Regional Council of Carpenters Joint Apprenticeship and Training Program and its funds shall be administered pursuant to an agreement and declaration of trust administered jointly by the joint apprenticeship committee. The agreement of declaration and trust shall be in accordance with all requirements of the law.

(62)   A copy of the agreement and Declaration of Trust, together with any amendments thereto, shall be considered as part of this agreement as though set forth here at length.

(63)    The Joint Apprenticeship Committee has the option to employ a full-time Instructor/Coordinator of their choice whose salary and expenses will be payable from The Ohio & Vicinity Regional Council of Carpenters Joint Apprenticeship and Training Fund. The Instructor/Coordinator will be a member of The Ohio & Vicinity Regional Council of Carpenters.

# ARTICLE XIII
## EMPLOYERS' REQUIREMENTS

(64)   Layoff/Separation-The employer agrees that any carpenter removed from the payroll shall be furnished a separation statement showing the reason for the separation, and the date of same, the name and payroll address of the employer, the employer's unemployment compensation number and said separation will be signed by the employer's job representative.

(65)    Tools and equipment furnished-the employer shall furnish any bench, clamp, or hand screws, ladders, ropes, sawhorses, portable power saws or any other motor driven machines, tools or appliances. The employer shall furnish necessary files, saw clamps and adequate light.

(66)   Drinking water and sanitary facilities - the employer shall furnish fresh drinking water and proper sanitary facilities on all jobs. Iced water shall be furnished by the employer from May 1st through September 30th.

(67)    Tool Shed-The employer shall furnish a suitable room for the use of wall and ceiling carpenters/lathers for the purpose of keeping their tools and clothes and eating their lunch; such room to be kept clean at all times, heated in cold weather and provided with a substantial lock. This provision does not apply on small jobs. The foreman shall see that the tool shed is locked when leaving the job.

**(68)**     Hard Hats-The employer will furnish and the employees will wear hard hats as required by Federal and/or State Safety Regulations.  The employer will furnish welding hoods, welding gloves and rain gear when necessary.  The employer shall have the right to require employees to sign a receipt when issued these items, and if the items are not returned at the time of his separation from employment, the employer may deduct the cost of the items from the employee's pay.

**(69)**     Tool Replacement-After working hours, the employer shall be responsible for any wall and ceiling carpenters/lathers' tools lost by fire or theft by forcible entry which have been stored in the employer's specified locked area.  Full replacement value of tools lost shall be provided by the employer if a list of tools has been submitted to the employer's job representative prior to the loss.

**(70)**     Subcontracting-The employer agrees where any portion or portions of his contract for on-site construction, alteration or repair work covered by this agreement is to be sublet or assigned to a subcontractor, that the subcontractor(s) shall be advised by the employer of the existence of this agreement.  The employer further agrees that any subcontracting of work covered by this agreement shall only be sublet or assigned to those employers who are party to a current written agreement with a union which agreement provides standards of wages and other economic conditions at least equal to those provided by this agreement.

**(71)**     Any violation of any labor agreement by a subcontractor signatory to an agreement with a union shall be the sole responsibility of the subcontractor involved.

**(72)**     The provisions of this subcontracting section shall not be used by the union to advance a jurisdictional claim.

**(73)**     Surety Bond-The fund Trustees may require the employer to provide a Surety Bond of twenty-five thousand dollars ($25,000); to guarantee contributions to the Health and Welfare Fund, Pension Fund, and Joint Apprenticeship and Training Fund specified elsewhere in this agreement.  Said bond may be by certified or cashiers check or may be a surety bond underwritten by a responsible surety underwriter on a bond form provided by the Fund Trustees.  Said bond shall be posted with the Trustees of the Fund(s).  Any Employer not previously a part to an Agreement with the Ohio & Vicinity Regional Council of Carpenters, Southwest Region may be required, at the option of the union, to post a bond as surety for payment of fringe funds per the following schedule of amounts:

| | |
|---|---|
| 10 or less employees | $25,000 |
| 11 to 25 employees | $75,000 |
| greater than 25 employees | $150,000 |

**ARTICLE XIV**

## HEALTH & WELFARE, PENSION AND ANNUITY PLANS

**(74)**     Effective with the hours worked on and after June 1, 2007 the Employer agrees to contribute to the Ohio & Vicinity Regional Council of Carpenters Welfare Fund for each straight time and each overtime hour worked by Employees covered by this Agreement in the amount as stated and approved in the Appendixes of this Agreement.

**(75)**   The contribution payments of the employer shall be used exclusively to provide group life insurance; accidental death and dismemberment insurance, hospital expense insurance, surgical expense insurance, medical expense insurance, and temporary disability benefits to eligible wall and ceiling carpenters/lathers and their families in such form and amounts as the Trustees of the Health & Welfare Fund may determine, including allowances for the organization and administration expenses of the Health & Welfare Fund.

**(76)**     The Health & Welfare Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives from employers and the union, which agreement and declaration of trust shall conform to all requirements of law.  A copy of the Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as part of this agreement as though set forth here at length.

**(77)**     Pension Plan - Subject to the provisions of Section 3, during the continuation of this Agreement, and subject to the limitations provided in Section 2.4 of the Pension Plan Agreement, each Employer shall pay to the Corporate Trustee for credit to the Pension Trust Fund, for each hour such Employer compensates each Employee at his/her straight time or overtime hourly rate in the amount as stated and approved in the Appendixes of this Agreement.

**(78)**   The contribution payments of the employer shall be used exclusively to provide Pension benefits to eligible wall and ceiling carpenters/lathers in such form and amounts as the Trustees of the Pension Fund may determine, including allowances for the organization and administration expenses of the Pension Fund.

(79)   The Pension Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives from employers and the union, which Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as part of this agreement, as though set forth here at length.

**(80)**     Effective June 1, 2004, the parties agree to the establishment of a Defined Contribution Pension Plan (Annuity Plan) Trust Agreement.   Subject to the provisions of Section 3, during the continuation of this Agreement, the Employer shall pay to the Corporate Trustee for credit to the Annuity Plan Trust Fund, for each hour the Employer compensates each Employee at his/her straight time or overtime hourly rate in the amount equal to the amount stated and approved in the Appendixes of this Agreement.

**(81)**   The monthly contribution period shall include the employer's last full weekly pay period of the month reported on report forms furnished by the funds.  Said report and contribution payments are due and payable on or before the twentieth (20th) day of each month for all

amounts due for the preceding month(s) on separate checks payable to the appropriate funds and forwarded in accordance with the instructions on the forms. Failure on the part of the employer to pay the amounts due by him shall be deemed a breach of this agreement by such employer.

**(82)**   No contributions shall be acceptable by the trustees of the funds unless a signed copy of this agreement or other document binding the employer to the obligations hereto is on file.

**ARTICLE XV**
**DUES DEDUCTION**

**(83)**   Section 1.  Commencing June 1, 2007 and continuing thereafter during the term of this agreement, and in accordance with the terms of an individual and voluntary authorization for check-off of membership dues in the form agreed upon by the parties hereto and permitted by the provisions of Section 302(c) of The Labor Management Relations Act, as amended, the employer agrees to deduct once each week from the wages of each employee covered by this agreement, who signs such authorization. The Employer agrees to deduct once each week from the wages of each Employee covered by this Agreement, who signs such authorization, dues check-off at the amount as the Union may from time to time designate in writing of the applicable wage rate of apprentice or journeymen wages including overtime hours.

**(84)**   Section 2.  The amount deducted shall be remitted to the union by the twentieth (20th) day of the following month together with a statement setting forth the name and hours worked of each employee from whose wages the deduction is made.

**ARTICLE XVI**
**STEWARDS**

**(85)**   The business representative of the union shall have the authority to designate the steward from among the journeymen on the job.  The employer shall be notified in writing as to the name of the steward.  The steward shall appoint a journeyman from among those on the job to act as steward in case of his/her absence.  The steward shall be the last working journeyman on the job, provided he/she is capable of performing the work in question.

**(86)**   The steward may be discharged for cause but not for acting as steward.  Whenever it is deemed necessary to release a steward from employment, the office of the Regional Council shall be notified twenty-four (24) hours in advance, and the business representative shall investigate the reason, unless the job is finished.

17

(87)    Should any carpenter meet with an accident while working, that renders him/her unable to care for themselves, the steward shall see that he/she is properly cared for without loss of time to the steward. The steward shall report the injury to the employer and the union. The care of the injured carpenter is the employer's responsibility and when the employer carries out his responsibility, the steward is to continue his/her work. The steward shall have the authority to call wall and ceiling carpenters/lathers off in inclement weather. A Steward shall have First Aid Certification, CPR Certification and shall have completed the OSHA 10 hour Construction Safety program and the OSHA 30 hour training program.


# ARTICLE XVII
## ELIMINATION OF LUMP AND PIECE WORK
(88)    Wall and ceiling carpenters/lathers shall not do lump or piece work.


# ARTICLE XVIII
## MEMBERS OF AFFILIATED
(89)    All mill, bench and machine carpenters, when called to work on outside work, interior finish in buildings or setting up of fixtures, shall be required to work under the same conditions governing outside wall and ceiling carpenters/lathers as to hours and rates of wages.


# ARTICLE XIX
## WOOD WORKING TOOLS AND TOOL CONDITIONING
(90)    All wood working machinery, tools and appliances shall be operated by wall and ceiling carpenters/lathers when used on work under their jurisdiction.

(91)    A miter box, owned by a carpenter, may be used by such carpenter on the job; however, no carpenter shall be required to furnish a steel miter box.


# ARTICLE XX
## ENFORCEMENT RIGHTS
(92)    In the event the employer should fail to make the contribution payments and reports when due and payable as specified elsewhere in this agreement to any jointly Trusteed Fund(s), such delinquent employer shall be required to pay an additional amount of five percent (5%) per month or part thereof of the amounts due the respective funds for purposes of reimbursing the fund(s) for additional administrative expenses, impairment of reserves and costs of collection arising from late payments.

(93)    The trustees of the funds, or their authorized representatives, shall have the right, upon giving reasonable notice, to audit the payroll or other records of the employer on hours worked by wall and ceiling carpenters/lathers for the purpose of determining that such employer is in

compliance with the provisions of this agreement. The employer hereby agrees to cooperate with requests for any such audit or inspection.

(94)    Notwithstanding any other provision(s) of this agreement, an employer found to be delinquent in his contribution payments to the Fund(s) and who does not make payment in full of the amount(s) due within five (5) days following notification shall provide the union the absolute right to strike such delinquent employer(s) until the delinquent contribution payments are made or until arrangements for payment(s) satisfactory to the union and/or Trustees of the Fund(s) are concluded.

(95)    The employer recognizes the rights of the union in enforcing the provisions of this agreement as guaranteed under the provisions of The National Labor Relations Act as amended and upon receipt of reasonable notice hereby agrees it will furnish information requested by the union or its agents relative to such enforcement.

(96)    In addition, the union and/or the Trustees of the Funds retain the right to take any legal or other appropriate action as may be deemed necessary to collect delinquent payment(s) and the delinquent employer shall also be liable for any attorney fees, expenses and other disbursements incurred by the union or the trustees in the collection of such delinquent employer contribution(s).

(97)    The provisions and terms of this article are not subject to or suitable for arbitration by the terms of this agreement or any other agreement.


## ARTICLE XXI
## CONSTRUCTION INDUSTRY ADVANCEMENT PROGRAM

(98)    The employer and the union agree to and approve the establishment of a Construction Industry Advancement Program to promote the common good of the construction industry by providing financial support for activities which may include, but not necessarily be restricted to:

      (a) Promotion of Safety
      (b) Market Development
      (c) Protection of Legitimate Markets
      (d) Public Relations
      (e) Personnel Practices and Labor Relations
      (f) Education
      (g) Industry Relations
      (h) Apprenticeship Training
      (i) Participation in Funds and Plans Provided for in Collective Bargaining Agreements, such as Health and Welfare Plans
      (j) Collection and Distribution of Information from and to all Segments of the Construction Industry and Related Groups or Authorities

(99)    Each employer covered by this agreement shall pay to The Construction Industry Advancement Program twenty-five cents ($.25) for each hour worked by each carpenter covered

by this agreement.  Payments to the program shall be in the actual amount shown and in accordance with instructions on forms furnished by the Association who is the exclusive administrator of this Fund.

**(100)**   The monthly contribution period and report shall include the last full weekly pay period of the month.  Payments and reports for each monthly contribution period shall be due on or before the twentieth (20th) day of each month covering amounts due for the preceding month.

**(101)**   If an employer fails to make payment when due and payable, he shall be subject to an additional charge of five percent (5%) per month until paid, to reimburse The Construction Industry Advancement Program for damages due to additional administrative expenses, impairment of reserves, and costs of collection arising from late payment.

**(102)**   Should there be any termination of payments allocable to The Construction Industry Advancement Program by reason of the expiration of this agreement, or for any other reason, the assets and fund of The Construction Industry Advancement Program shall not be distributed among any employers, or the union, but shall be held by the Association, which shall continue to administer and expend such assets and funds for the purposes and subject to the conditions provided herein.

**(103)**   There is specifically excluded from the purposes of The Construction Industry Advancement Program the right to use any of its funds for lobbying in support of anti-labor legislation and/or to subsidize employers during periods of work stoppages or strikes.

## ARTICLE XXII
## INTENTION

**(104)**   It is the intention of the parties hereto to comply with all applicable provisions of State or Federal Law and they believe that each and every part of this agreement is lawful.

**(105)**   All provisions of this agreement shall be complied with unless any of such provisions shall be declared invalid or inoperative by final order of any court of competent jurisdiction or is caused to become invalid or inoperative due to enactment of new state or federal laws.  In such event the negotiating agent, or the union, may, at its option, require renegotiation of such individual provisions for the purpose of adequate replacement thereof, reserving the right of economic recourse in the event agreement cannot be reached in such negotiations;  and such action  shall not constitute a violation of this agreement.

## ARTICLE XXIII
## DRUG-FREE WORKPLACE

**(106)**   The union and employer agree to implement a program to aid in maintaining a drug-free workplace.  The union and individual contractor will jointly develop a program to suit specific needs.

(107)   If the Dayton Building Trades reaches an overall drug policy, like the "Shield Program" or something similar, we will agree to that policy, if not, all policies of individual companies must be negotiated independently.

## ARTICLE XXIV
## MOST FAVORED NATIONS

(108)   The union hereby agrees that if at any time it enters into any agreement, understanding, project agreement or other understanding with any other employer, or employer Association who is or are in competition with a signatory contractor to this agreement or contractor bound to this agreement which is applicable within the geographic area covered by this agreement which conditions, etc., are deemed by the employer signatory to this agreement to be more favorable than the conditions of employment set forth in this agreement in any real competitive respect, then in that event, the employer signatory hereto shall have the right to adopt such more favorable condition(s) in lieu of the condition(s) set forth in this agreement upon giving notice of same to the union signatory hereto.  Any notification sent to effect this right shall include a copy of the agreement which contains the more favorable condition(s) and an indication of which clause(s) in such agreement are either being added or replacing clauses in this agreement.  This clause excludes international agreements or project agreements if made available prior to bid to contractors signatory to this agreement or project agreements signed directly with the owner/owner's agent and the union.

## ARTICLE XXV
## PERIOD OF AGREEMENT

(109)   This agreement shall remain in full force and effect to midnight, May 31, 2011, and shall continue to remain in full force and effect from year to year thereafter unless either party notifies the other party in writing of its intention to modify, amend, or terminate this agreement not less than sixty (60) days before the expiration date or yearly extension period.  In addition, an individual employer may modify and or terminate this agreement by notifying the other party in writing sixty (60) days prior to May 31, 2011 of his intent to modify and or terminate this agreement which, this agreement shall terminate as of May 31, 2011 for that employer only.

(110)   This agreement shall be binding upon the union, its members, officers, representatives, assigns and/or successor(s).

In witness whereof, we the undersigned authorized representatives of the West Central Ohio Division, Wall and Ceiling Contractors Section of the Labor Relations Division, OBC., ACG, Inc., and The Ohio & Vicinity Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America hereunto affix our hands this 1st day of June 2007.

WEST CENTRAL OHIO DIVISION
WALL AND CEILING CONTRACTORS SECTION OF THE
LABOR RELATIONS DIVISION, OBC., AGC, INC.
115 LINWOOD STREET
DAYTON, OHIO 45405
(937) 228-7865

*By:S/*_____
        Kenneth W. Oren

*By:S/*_____
        Randall L. Fox

*By:S/*_____
        Mark Combs

By:S/_____
        Ralph Perry


THE OHIO & VICINITY REGIONAL COUNCIL OF CARPENTERS
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA
204 NORTH GARVER ROAD
MONROE, OH   45050
(513) 539-2759

By:S/_____
        Frank Reynolds

By:S/_____
        Herb Adams

By:S/_____
        Joseph Smith


## ACCEPTANCE OF AGREEMENT

The undersigned employer, desiring to become an additional party to this 2007-2011 agreement between West Central Ohio Division, Wall and Ceiling Contractors Section of The Labor Relations Division, OBC., AGC, Inc. And The Ohio & Vicinity Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, which is dated June 1st 2004,  hereby certify that they have read this agreement and agree to accept and be bound by all its terms and conditions as an additional party hereto.

For the employer:

_____

(COMPANY NAME)

_____

(STREET ADDRESS)

_____

(CITY, STATE & ZIP CODE)


*BY:S/*_____

(AUTHORIZED EMPLOYER REPRESENTATIVE)

_____

(TELEPHONE)

_____

(OHIO WORKERS COMP. RISK #)

_____

(EMPLOYERS OHIO UNEMPLOYMENT#)


FOR THE UNION:

*BY:S/*_____

_____

(TITLE)

_____

(DATE)

new unit to be constructed even though the new unit is constructed on the same property or premises. Maintenance Work shall be performed at the basic rate.

WITNESS WHEREOF, we, the undersigned, have executed this Agreement on the _____ 2nd _____ day of _____

_____ Jan . _____ 2004 _____
Month                                    Year

**OHIO & VICINITY REGIONAL COUNCIL OF CARPENTERS**

_____
Name Of Representative

Adams Construction Co.
Firm Name of Employer

169 Wedgewood Ave
Address
Cin. OH 45217
513-861-9100
Phone Number

1344873-00-7
Employer's Unemployment Insurance Number

1406513
Employer's Workers' Compensation Insurance No. or Name of Insurance Carrier


_____
David L. Chaney, Executive Regional Director
Ohio & Vicinity Regional Council of Carpenters
200 North Garver Road
Monroe, Ohio 45050
Phone • (513) 539-2759          Fax • (513) 539-8432

_____
Judith Trotter Short, Executive Director
Carpenter Employers Division,
Walls & Ceilings Contractors Association of Greater Cincinnati
1010 Yale Avenue • Cincinnati, Ohio 45206
Voice • (513) 221-8020          Fax • (513) 221-8023